**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CIVIL ACTION NO. 5:14-CV-005-RLV-DCK**

| | | |
|---|---|---|
| **DEREK S. BRADSHAW,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 12) and Defendant's "Motion For Summary Judgment" (Document No. 16). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be <u>denied</u>; that Defendant's "Motion For Summary Judgment" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. BACKGROUND

Plaintiff Derek S. Bradshaw ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits. (Document No. 1). On July 2, 2010, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405, alleging an inability to work due to a disabling condition beginning March 1, 2010. (Transcript of the Record of Proceedings ("Tr.") 21, 139-147). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on August 10, 2010, and again after

reconsideration on February 2, 2011. (Tr. 21, 79-82, 83-86). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. We realize that your condition keeps you from doing any of your past jobs, but it does not keep you from doing less demanding work. Based on your age, education, and past work experience, you can do other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 83).

Plaintiff filed a timely written request for a hearing on April 6, 2010. (Tr. 21, 91-92). On May 16, 2012, Plaintiff appeared and testified at a hearing before Administrative Law Judge Wendell M. Sims ("ALJ"). (Tr. 21, 34-55). In addition, Janette Clifford, a vocational expert ("VE"), and Stacy Eggers, Plaintiff's attorney, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on June 19, 2012, denying Plaintiff's claim. (Tr. 18-33). Plaintiff filed a request for review of the ALJ's decision on August 17, 2012, which was denied by the Appeals Council on November 8, 2013. (Tr. 1-7). The "Decision Of The Appeals Council" specifically noted that

> Claimant's attorney, George C. Piemonte, submitted comments alleging that: the claimant met Listing 1.04; the ALJ conducted an improper analysis of the claimant's mental impairments and; the treating opinion of Dr. Hannibal should have been give greater weight. The comments of the claimant's attorney are not meritorious because the evidence does not support a finding that the claimant is disabled.

(Tr. 4). When the Appeals Council denied Plaintiff's review request, the June 19, 2012 ALJ decision became the final decision of the Commissioner. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on January 8, 2014. (Document No. 1). On March 6, 2014, the undersigned was assigned

2

to this case as the referral magistrate judge. Plaintiff's "Motion For Summary Judgment" (Document No. 12) and "Plaintiff's Memorandum In Support Of Motion For Judgment On The Pleadings" (Document No. 13) were filed June 23, 2014; and Defendant's "Motion For Summary Judgment" (Document No. 16) and Defendant's "Memorandum In Support Of The Commissioner's Decision" (Document No. 17) were filed September 23, 2014. Plaintiff has declined to file a Response/Reply brief. See 3:13-mc-198-FDW, "Social Security Briefing Order," (Document No. 1) (W.D.N.C. Dec. 23, 2013). As such, the pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Richard L. Voorhees is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between March 1, 2010, and the Plaintiff's date last insured.[1] (Tr. 21). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at 1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 28-29).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since March 1, 2010, his alleged disability onset date. (Tr. 23). At the second step, the ALJ found that Plaintiff's lumbar degenerative disc disease with radiculopathy was a severe impairment.[2] (Tr. 23-24). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 24) (citing Tr. 68-77).

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform light work activity, with the following limitations:

> [T]he claimant must avoid concentrated exposure to hazards and is limited to only frequent climbing, balancing and stooping due to his pain, decreased reflexes, and positive straight leg raise test. Finally, the claimant must have a sit/stand option due to his credible testimony that he is only able to sit for 30 minutes to an hour at a time.

(Tr. 24, 27). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." (Tr. 24). The ALJ further opined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 25). "The claimant's allegations regarding his pain and ensuing limitations are not supported by the objective clinical findings and observations contained in the record." Id.

At the fourth step, the ALJ determined that Plaintiff could not perform his past relevant work as a dry wall hanger. (Tr. 28). At the fifth and final step, the ALJ concluded based on the testimony of the VE and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 28-29). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included parking lot attendant, marker/labeler, and sorter. (Tr. 29). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between March 1, 2010, and the date last insured, June 30, 2011. (Tr. 29).

6

Plaintiff on appeal to this Court makes the following assignments of error: (1) improper analysis at Step 3; (2) failure to consider treating physician opinion; and (3) failure to properly assess Plaintiff's mental impairment. (Document No. 13). The undersigned will address each of these contentions in turn.

**A.     The Listing**

In his first assignment of error, Plaintiff argues that the ALJ "misstates or fails to mention medical evidence suggestive of Bradshaw meeting or equaling Listing 1.04A" and fails to explain the reasoning behind his Step 3 analysis. (Document No. 13, p.1-2, 12). Plaintiff states that in Radford v. Colvin, the Fourth Circuit held that "the ALJ must provide an explanation of why a Listing is not met." (Document No. 13, p.13) (citing Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013)). Specifically, the Fourth Circuit stated the following in Radford:

> [The ALJ] summarily concluded that Radford's impairment did not meet or equal a listed impairment, but [the ALJ] provided no explanation other than writing that he "considered in particular," a variety of listings, including Listing 1.04A, and noting that state medical examiners had also concluded "that no listing [was] met or equaled." This insufficient legal analysis makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings.

(Document No. 13, pp.13-14) (quoting Radford, 734 at 295).

Plaintiff suggests that there is evidence for each component of the listing and lays out each criteria of the listing with the possible supporting evidence. (Document No. 13, pp.14-16). Plaintiff further contends that, given the clear volume of evidence that supports a possible finding of the listing, the ALJ needed to follow Radford and offer a more developed explanation as to why such evidence did not fulfill the criteria. (Document No. 13, p.16) (citing Radford at 294).

To meet Listing 1.04A, Plaintiff must prove a disorder of the spine:

> (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis,

7

> vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

Listing 1.04A, 20 CFR Pt. 404, Subpt. P, App. 1.

Defendant acknowledges that the ALJ's discussion of his findings at steps two and three is "spare." (Document No. 17, p.6). Defendant suggests, however, that the ALJ included his substantive discussion of the evidence at step four, in his consideration of Plaintiff's RFC. Id. (citing Tr. 24-27). Defendant contends that such collapsing of the analysis of the evidence is not "the preferred form of opinion writing for an ALJ," but it is also not necessarily reversible error. Id. (citing McCartney v. Apfel, 28 Fed. Appx., 277, 279 (4th Cir. 2002) (finding that an ALJ's analysis of medical evidence at step three instead of step four was not error because "the ALJ need only review medical evidence once in his decision"), and Jones v. Astrue, 2009 WL 455414, at *2-3 (E.D.N.C. Feb. 23, 2009) ("the ALJ here did adequately consider plaintiff's lower back pain in later steps of the sequential evaluation, though not necessarily in the most straightforward manner."). See also, Brown v. Colvin, 1:13-CV-096-GCM, 2014 WL 4666978, at *9-10 (W.D.N.C. Sept. 18, 2014).

As noted by Defendant, the ALJ discussed Plaintiff's 2007 injury to his lower back at step two and determined that his Lumbar degenerative disc disease with radiculopathy "imposed more than slight limitations on his ability to perform work-related functions and that it was a severe impairment." (Tr. 23-24) (citing 20 CFR 404.1520(c); Exhibit 1F [Tr. 219-225]; Exhibit 2F [Tr. 226-234]; Exhibit 3F [Tr. 235-236]; Exhibit 4F [Tr. 257-277]; Exhibit 5F [Tr. 278-289]; Exhibit

6F [Tr. 290-301]; Exhibit 9F [Tr. 310-323]; Exhibit 10F [Tr. 324-335]; Exhibit 12F [Tr. 340-413]; and Exhibit 13F [Tr. 414-437]. Defendant further notes that the ALJ continued his analysis of Plaintiff's back problems during the RFC analysis. (Document No. 17, p.5) (citing Tr. 25-26) (citing Exhibit 2E [Tr. 164-167]; Exhibit 4F [Tr. 257-277]; Exhibit 5F [Tr. 278-289]; Exhibit 6F [Tr. 290-301]; Exhibit 10F [Tr. 324-335]; and Exhibit 13F [Tr. 414-437]).

The ALJ specifically discussed evidence that Plaintiff had received pain relief from injections/medication, including testimony at the hearing "that his pain medications made his pain tolerable." (Tr. 26). The ALJ stated that "[a] symptom which can be reasonably controlled by medication or treatment is not disabling." Id. (citing Gross v. Heckler, 785 F.2d 1164 (4th Cir. 1986 (citing Pudham v. Celebreeze, 349 F.2d 828 (4th Cir. 1965)).

The undersigned observes that Plaintiff has alleged that the ALJ "misstates or fails to mention medical evidence…." (Document No. 13, pp.1-2, 12). However, Plaintiff provides no example of any misstatement by the ALJ. (Document No. 13).

To the extent Plaintiff contends that the ALJ failed to mention medical evidence regarding Listing 1.04A, the undersigned disagrees. As noted above and acknowledged by Defendant, the analysis of the relevant evidence did not fall in the step 3 portion of the ALJ opinion, but appears to have been covered under sections regarding step 2 and step 4. In addition, contrary to the argument that the ALJ failed to mention certain evidence, the decision shows that the ALJ cited the very same exhibits cited by Plaintiff's brief. Compare (Document No. 13, pp.14-16 and Tr. 23, 25-26).

The undersigned is persuaded that the ALJ considered substantial evidence in determining that Plaintiff did not meet or equal the criteria of a Listing at step 3 of the sequential evaluation.

9

As such, it is not for this Court to re-weigh the evidence or substitute its judgment for that of the Commissioner. See Hancock, 667 F.3d at 472.

**B.       Treating Physician Opinion**

Next, Plaintiff challenges that the ALJ failed to properly weigh the opinion evidence offered by Plaintiff's treating orthopedic specialist, Dr. Hannibal. (Document No. 13, p.17). Plaintiff asserts that the ALJ "rejects the opinion of Dr. Hannibal," and incorrectly found that Dr. Hannibal's opinion was inconsistent with the objective clinical findings in the record. (Document No. 13, p.17) (citing Tr. 298). Plaintiff further asserts that the ALJ's analysis inadequately supports his finding that Dr. Hannibal's opinion is inconsistent with Plaintiff's reported activities and/or Hannibal's prior opinion(s). (Document No. 13, p.17).

Plaintiff continues his argument by addressing the regulations that apply when an ALJ determines the weight given to the opinions of treating physicians. (Document No. 13, pp.18-21). Specifically, Plaintiff asserts that the ALJ failed to consider the following requirement of 20 C.F.R. § 404.1527(c)(2):

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed below, as well as the factors in paragraphs (d)(3) through (5) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(Document No. 13, p.19) (quoting 20 C.F.R. § 404.1527(c)(2)). Plaintiff suggests that the ALJ failed to identify substantial evidence that contradicts or conflicts with Dr. Hannibal's opinions, and thus the ALJ erred by failing to give Hannibal's opinion controlling weight. (Document No.

13, p. 20). Plaintiff concludes that even if the ALJ did not give controlling weight to Dr. Hannibal's opinion, he was required to consider the factors listed in the regulations and to explain his determination. (Document No. 13, p.20) (citing 20 C.F.R. § 404.1527(c)(2); SSR 96-2p and 96-5p).

The undersigned notes the following pertinent discussion of opinion evidence in the ALJ's decision:

> evidence submitted at the hearing level shows that the **claimant is more limited than the State agency consultant determined** (Exhibit 13F). Therefore, the undersigned has provided the claimant with a sit/stand option based on his credible testimony that he is only able to sit for 30 minutes to an hour.
>
> **Some weight has also been assigned to the opinion of Dr. Matthew Hannibal**, the claimant's orthopedist. In July 2010, **Dr. Hannibal opined that the claimant was not able to return to heavy-duty type work, but should work with vocational rehabilitation to retrain for light duty work**. **The undersigned agrees with this portion of the opinion as it is consistent with the record as a whole, which shows that the claimant retains full muscle strength and sensation as well as a normal gait and station** (Exhibit 5F; Exhibit 6F; Exhibit l0F; Exhibit 13F). However, Dr. Hannibal went on to state that he did not think that the claimant was able to return to any type of gainful employment in his current condition. That part of his opinion is inconsistent with the objective clinical findings contained in the record, the claimant's reported activities, as well as with his own prior opinion (Exhibit 4F; Exhibit 5F; Exhibit 6F; Exhibit l0F; Exhibit 12F).
>
> In sum, the claimant has been limited to light work due to his credible reports of low back and leg pain. This finding is consistent with the claimant's reports that he is able to engage in activities such as driving and fishing.

(Tr. 27) (emphasis added).

Defendant argues that contrary to Plaintiff's contention that the ALJ rejected Dr. Hannibal's opinion, the ALJ actually agreed with Dr. Hannibal. (Document No. 17, p.7). Specifically, the ALJ agreed that Plaintiff could not return to heavy-duty type work, but should

work with vocational rehabilitation to retrain for light duty work. Id. (citing Tr. 27, 283, 294, 328).

The ALJ further explained that he believed that Dr. Hannibal's opinion that Plaintiff could not return to any work in his current condition was inconsistent with the record and previous findings. (Tr. 27). Defendant notes that the ALJ found that Plaintiff retained "full muscle strength and sensation as well as normal gait and station," and that these findings are documented in the treatment notes. (Document No. 17, p.10) (citing Tr. 27, 288, 300, 333). According to Defendant, this is evidence that Dr. Hannibal's opinion was inconsistent with a conclusion that Plaintiff could not return to gainful employment in his current condition. (Document No. 17, p.10). Moreover, the ALJ clearly stated that "part of his opinion is inconsistent with the objective clinical findings contained in the record, the claimant's reported activities, as well as with his own prior opinion." (Tr. 27) (citing Exhibit 4F; Exhibit 5F; Exhibit 6F; Exhibit l0F; and Exhibit 12F). Thus, the ALJ cited evidence in the record that he believed contradicts or conflicts with part of Dr. Hannibal's opinion.

In addition, Dr. Hannibal's own opinion appears to be inconsistent. For example, on July 8, 2010, Dr. Hannibal stated in the same paragraph that: "I think it would be best if he approached Voc. Rehab for possible light duty work *at this time*" and "I do not think that his condition as the way it is that he is able to return to any type of gainful employment *at this time*." (Tr. 283) (emphasis added). Then, Dr. Hannibal concluded in his recommendations on the same date: "[w]e will direct him to Voc. Rehab for possible job retraining, possibly some light duty work." (Tr. 284). On October 21, 2010, Dr. Hannibal noted that Plaintiff had been working with vocational rehab and job retraining, and had "been able to do some work." (Tr. 294). Defendant observes that the ALJ "found Dr. Hannibal's opinion that the Plaintiff should work with the vocational

12

rehabilitation to retrain for light duty work inconsistent with his opinion that he did not think that the claimant was able to return to any type of gainful employment in his current condition (Tr. 27)." (Document No. 17, p.11).

Next, Defendant observes that the ALJ found Dr. Hannibal's opinion (and Plaintiff's allegations) to be inconsistent with Plaintiff's reported activities. (Document No. 17, pp.10-11).

> The ALJ noted that the Plaintiff reported that his back pain was recently exacerbated after he hit a pothole while using a riding lawn mower (Tr. 26, 262, 353). Further, in July 2010 the Plaintiff reported he had no problems with self-care, could lift approximately 20 pounds with one arm, and did some yard work though he was in pain the next day (Tr. 26, 303). In October 2010, Plaintiff reported that he had been able to do some work, specifically mentioning that he had been weeding and mowing the lawn, but that his symptoms flared up afterwards (Tr. 26, 294). The ALJ also noted that the Plaintiff remains able to drive (Tr. 26, 303). The ALJ considered Plaintiff's testimony that he occasionally goes fishing (Tr. 26, 45). The ALJ found "[t]he ability to engage in the above-listed activities is inconsistent with the claimant's allegations that he has disabling pain, cannot stand for longer than 30 minutes to an hour, cannot walk more than 100 feet, and cannot lift more than five pounds" (Tr. 26-27).

(Document No. 17, pp.10-11) (citing Tr. 26-27).

Defendant also notes that pursuant to applicable regulations there is a distinction between medical opinions and opinions reserved to the Commissioner. (Document No. 17, p.11). For example, "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine you are disabled." Id. (citing 20 CFR § 416.927(d)(1)). And finally, Defendant suggests that despite Plaintiff's contentions, Dr. Hannibal is not his treating physician. Id. Defendant asserts that Dr. Hannibal discharged Plaintiff from his care around February 2011, after Plaintiff tested positive for marijuana. Id.

After careful consideration of the foregoing and the record as a whole, the undersigned disagrees with Plaintiff's allegation that the ALJ rejected Dr. Hannibal's opinion, and/or that the

ALJ "failed to identify any substantial evidence" to support the weight given to Dr. Hannibal's opinion. Instead, it appears that the ALJ largely adopted Dr. Hannibal's opinion, and provided an adequate explanation for the parts he adopted, as well as the parts he declined to adopt. See (Tr. 27).

C.     **Assessment of Mental Impairment**

Finally, Plaintiff argues that the ALJ erred in his treatment of Plaintiff's depression. (Document No. 13, p.21). He avers that the ALJ "fails to acknowledge or even consider the diagnosis of major depressive disorder." Id. see also, (Tr. 195) (alleging new limitation of depression).

Plaintiff contends that pursuant to 20 C.F.R. § 404.1520a there is a required technique for evaluating mental impairments, where there is a colorable claim for mental impairment. Id. (citing 20 C.F.R. § 404.1520a). Plaintiff argues that "[t]he regulations require the ALJ to rate the degree of functional loss resulting from the mental impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." (Document No. 13, pp.21-22) (citing 20 C.F.R. § 404.1520a(c)(3)). Plaintiff alleges that the ALJ failed to appropriately address the factors outlined in the regulation and to explain his application of the technique. (Document No. 13, pp.22-23) (citing Shivel v. Astrue, 260 Fed. Appx. 88, 91 (10th Cir. 2008); Selassie v. Barnhart, 203 Fed. Appx. 174, 176 (9th Cir. 2006)). Plaintiff asserts that the ALJ's failure to address the technique represents harmful error because the ALJ's analysis affects his determination of Plaintiff's RFC. (Document No. 13, p.23). Plaintiff contends that "[the] Court cannot engage in meaningful review of nonexistent analysis to determine if substantial evidence supports the ALJ's conclusions." (Document No. 13, p.23).

Defendant contends that Plaintiff has failed to show a colorable claim of depression. (Document No. 17, p.13). Defendant observes that "[n]oticeably absent from Plaintiff's argument is any discussion of his depression, how it impacts him, a symptom, a medication, anything even related to his experience of depression." (Document No. 17, p.12). Defendant goes on to note that the record reflects that when directly asked about his depression, Plaintiff stated that:

> depression never has been a real problem for him --- at one time doctor felt medication may be needed but he was unable to take the meds so they went a different route --- it is very discouraging when you are 44 yo and cannot even take the garbage out without pain. He is physically disabled not mentally.

(Tr. 309); see also, (Document No. 17, p.12).

Defendant further contends that the burden of production and persuasion through step 4 is on Plaintiff's shoulders. Id. (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5. (1987); 20 CFR §§ 404.1520(e)-(f), 404.1545, 416.920(e)-(f), and 416.945). Defendant argues that Plaintiff has failed to carry his burden.

Contrary to Plaintiff's suggestion that the ALJ failed to "acknowledge or even consider" Plaintiff's alleged depressive disorder, the ALJ explicitly discussed Plaintiff's depression. See (Document No. 27, p.13); (Document No. 13, p.21). Specifically, the ALJ opined as follows:

> The claimant has also alleged that he has depression (Exhibit 10E). The medical records mention that the claimant has a history of depression with the claimant being prescribed anti-depressants for a short time in 2009. However, in August 2009, he reported that he was not sure if he really needed an antidepressant (Exhibit 4F; Exhibit 12F). Moreover, in January 2011, **the claimant reported that depression had never been a real problem for him** (Exhibit 8F). Accordingly, the undersigned finds that the claimant's history of depression does not cause more than a minimal effect on his ability to perform the basic work activities listed in 20 CFR 404.1521 and is, therefore, not "severe" as defined in the Regulations.

(Tr. 24) (emphasis added).

As an initial matter, the undersigned observes that neither Plaintiff, nor his counsel, alleged any disability or limitations based on depression or mental impairment at the hearing. See (Tr. 37-38). Next, the undersigned notes that the document Plaintiff appears to rely on to support "a new impairment of depression" was completed on or about May 10, 2011, a little over a month prior to the close of the period of time under review. (Tr. 195). The "Disability Report – Appeal – Form SSA-3441" (Tr. 195) directs that any new physical or mental limitation be described in detail and provide an approximate beginning date. Id. That report notes "depression," but fails to provide any detail or a beginning date. Id. The same "Disability Report…" indicates that Plaintiff had <u>not</u> seen "a doctor/hospital/clinic or anyone else for emotional or mental problems that limit [his] ability to work." (Tr. 196). Plaintiff also fails to specifically cite any evidence to support the claim that he received a "diagnosis of major depressive disorder." (Document No. 13, p.21).

The regulations provided the following guidance on what is needed to show an impairment:

> Your impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or **mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings**, not only by your statement of symptoms

20 CFR § 404.1508 (emphasis added). Signs, symptoms and laboratory findings are defined as follows:

> (a) Symptoms are your own description of your physical or mental impairment. Your statements alone are not enough to establish that there is a physical or mental impairment.
>
> (b) Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation,

16

> development, or perception. They must also be shown by observable facts that can be medically described and evaluated.
>
> (c) Laboratory findings are anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include chemical tests, electrophysiological studies (electrocardiogram, electroencephalogram, etc.), roentgenological studies (X-rays), and psychological tests.

20 CFR § 404.1528.

Plaintiff argues that the ALJ erred by failing to follow the special procedure for evaluating mental impairments. (Document No. 13, p.21). However, it is not clear to the undersigned that Plaintiff has shown by signs and/or laboratory findings evidence that supports his allegation of mental impairment, much less that he has a mental impairment that causes more than a minimal effect on his ability to do basic work activities.

The undersigned is persuaded that the ALJ provided an adequate discussion of Plaintiff's depression that is supported by substantial evidence. (Tr. 24). Moreover, under similar circumstances this Court has recently declined to find reversible error based on a failure to follow the procedures under 20 CFR § 404.1520a. See Teaster v. Colvin, 1:13-CV-253-RJC-DSC, 2014 WL 2712442, at *3-4 (W.D.N.C. May 14, 2014), adopted by 2014WL 2716891 (W.D.N.C. June 16, 2014).

### IV. CONCLUSION

The undersigned finds Defendant's arguments and authority compelling. Notably, Plaintiff has been afforded the opportunity to file a response/reply brief, but has declined to do so. See 3:13-mc-198-FDW (Document No. 1, p.3). Based on the briefs and the record, the undersigned concludes that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision.

Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).  As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 12) be **DENIED**; Defendant's "Motion For Summary Judgment" (Document No. 16) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: April 1, 2015

David C. Keesler
United States Magistrate Judge