# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
## CASE NO. 5:14-CV-00005-RLV-DCK

| | |
|---|---|
| DEREK S. BRADSHAW, ) ) Bradshaw, ) ) v. ) ) CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, ) ) ) ) ) Defendant. ) ) | **ORDER** |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's Objections to the Memorandum and Recommendation (the "M&R") of Magistrate Judge David C. Keesler. (Doc. 19). The M&R recommends that Plaintiff's Motion for Summary Judgment (Doc. 12) be denied, that Defendant's Motion for Summary Judgment (Doc. 16) be granted, and that the final decision of the Commissioner be affirmed. (*See* Doc. 18 at 4-17). Subsequent to Plaintiff filling his objections to the M&R, this Court ordered the parties to file supplemental briefs on whether the recent decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), requires sentence four remand pursuant to 42 U.S.C. § 405(g). (Doc. 21). The parties have submitted their supplemental briefs (Docs. 23, 24) and this matter is now ripe for disposition. In light of the decision in *Mascio*, the M&R (Doc. 18) is **NOT ADOPTED**, Plaintiff's Motion for Summary Judgment (Doc. 12) is **GRANTED**, Defendant's Motion for Summary Judgment (Doc. 16) is **DENIED**, and this matter is hereby **REMANDED** under sentence four of 42 U.S.C. § 405(g) for a new hearing to be held in a manner consistent with this order.

## I. BACKGROUND

The M&R accurately and substantially recounts the procedural and factual history. (*See* Doc. 18 at 1-3). Therefore, this Order incorporates the M&R's statement of the procedural and factual history. Nonetheless, in light of the issues raised in the supplemental briefs on *Mascio*, the Court will provide an overview of the procedural and factual history, highlighting those aspects of said history relevant to the *Mascio* issues.

Plaintiff Derek S. Bradshaw filed an application for disability insurance benefits, alleging a disability onset date of March 1, 2010. (Tr. 21, 56, 141). Bradshaw premised his application on a primary diagnosis of discogenic and degenerative disorder of the back and a secondary diagnosis of affect/mood disorder, being depression. (Tr. 23-24, 56). The Commissioner of Social Security ("Commissioner" or "Defendant") denied Bradshaw's application. (Tr. 21, 79-86). On May 16, 2016, Bradshaw appeared before Administrative Law Judge Wendell M. Sims ("ALJ Sims") for a hearing. (Tr. 21, 34-55).

At the hearing, Bradshaw testified to the following. In June 2007, Bradshaw underwent L5/S1-D decompression and discectomy surgery and remained out of work for one year following surgery to give the disc time to regenerate. (Tr. 23, 25, 39). Bradshaw stated that, upon returning to his work as a drywall hanger, he was unable to do work above his head or to bend down to do work down low and that he could not carry worksite materials. (Tr. 39-40, *see also* Tr. 25). Bradshaw alleged that, since surgery, he has experienced continual pain in his legs, primarily his right leg, and numbness in his right foot. (Tr. 40-41; *see also* Tr. 23). Bradshaw contended that his pain level averaged a seven out of ten, that oral pain medication made his pain "tolerable," and that steroid injections in his back resulted in short-term improvements to his mobility but that the injections did not provide significant or lasting pain relief. (Tr. 25, 42, 47). Bradshaw testified

that, as a result of his pain and foot numbness, he could not bend over, could not sit or stand for more than thirty minutes at a time, could only lift five pounds while sitting, and could only walk 100 feet at a time. (Tr. 25, 43, 46). The pain and numbness further prevented Bradshaw from engaging in most of his pre-surgery hobbies with the exception of fishing, which he did while seated in a chair and only if accompanied by another individual who could carry his tackle box. (Tr. 25-26, 45). Bradshaw testified that, since his date of disability, he only drives a little bit, does not perform household chores because he is unable to bend over, and that his one attempt to mow the lawn on a riding mower resulted in a significant flare up of his back pain that left him bedridden for a day and a half. (Tr. 25-26, 42-44). Neither Bradshaw's counsel nor ALJ Sims asked Bradshaw any questions about his depression. (*See* Tr. 34-55).

ALJ Sims issued a decision denying Bradshaw's claim for benefits. (Tr. 21-29). At Step One, ALJ Sims concluded that Bradshaw had not engaged in substantial gainful activity since his alleged disability onset date. (Tr. 23). At Step Two, ALJ Sims concluded that Bradshaw's lumbar degeneration disc disease with radiculopathy qualified as a severe impairment. (Tr. 23-24). ALJ Sims, however, concluded that Bradshaw's alleged impairment of depression was not severe. (Tr. 24). At Step Three, ALJ Sims concluded that Bradshaw's lumbar degeneration disc disease with radiculopathy did not meet any of the listings in 20 C.F.R. § 404. *Id*. ALJ Sims established a residual functional capacity of light work with (1) a "sit/stand option where he sits for 30 minutes at a time and stands as needed," (2) a physical restriction for only frequent climbing, balancing, and stooping, and (3) a restriction "to avoid concentrated exposure to hazards." *Id.* ALJ Sims then evaluated Bradshaw's credibility. (Tr. 25-27). First, ALJ Sims concluded that Bradshaw's statements about "the intensity, persistence, and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr.

25). Second, ALJ Sims discussed how some of Bradshaw's allegations compared to the records from his pain clinic visits and to his daily activities. (Tr. 26-27). For purposes of Step Four, ALJ Sims relied on the residual functional capacity assessment to conclude that Bradshaw was unable to perform his past relevant work as a drywall hanger. (Tr. 28). At Step Five, ALJ Sims concluded that Bradshaw was not disabled because his residual functional capacity and transferable job skills were sufficient to allow him to gain employment as a parking lot attendant, a marker/labeler, or a sorter. (Tr. 28-29).

The Appeals Council denied Bradshaw's request for review of ALJ Sims's decision. (Tr. 1-7). Bradshaw commenced this action and the parties filed cross motions for summary judgment, which were referred to Magistrate Judge David C. Keesler. (*See* Docs. 1, 12, 16). In his motion for summary judgment, Bradshaw raised three assignments of error: (1) ALJ Sims erred at Step Three by not adequately explaining why Bradshaw's discogenic and degenerative disorder of the back did not met or equal Listing 1.04A; (2) ALJ Sims did not follow 20 C.F.R. § 404.1527(c)(2) and improperly rejected the opinion of Bradshaw's treating physician; and (3) when discounting Bradshaw's claim of depression at Step Two, ALJ Sims failed to employ the Psychiatric Review Technique ("PRT"), as called for by 20 C.F.R. § 404.1520a. (Doc. 13 at 12-23). On Bradshaw's first assignment of error, the M&R concluded that ALJ Sims's Step Two and Step Four analyses of Bradshaw's medical records provided the reasoning necessary to support the Step Three determination that Bradshaw's discogenic and degenerative disorder of the back did not met or equal a Listing. (Doc. 18 at 7-10). On Bradshaw's second assignment of error, the M&R concluded that ALJ Sims did not err because ALJ Sims largely adopted the opinion of Bradshaw's treating physician, discarding only those portions of the opinion that were internally inconsistent. *Id.* at 10-14. On Bradshaw's third assignment of error, the M&R noted Bradshaw's failure to

allege a mental impairment at his administrative hearing and his failure to identify evidence that supports a diagnosis of a mental impairment. *Id.* at 16-17. Based on these omissions, the M&R concluded that ALJ Sims adequately discussed Bradshaw's depression but that any failure to employ the PRT was harmless. *Id.* at 17.

Bradshaw objected to all three of the M&R's conclusions. (Doc. 19 at 2-8). Before considering Bradshaw's objections to the M&R, this Court *sua sponte* ordered the parties to file supplemental briefs on "whether the ruling in *Mascio* [*v. Colvin*, 780 F.3d 632 (4th Cir. 2015),] requires sentence four remand pursuant to 42 U.S.C. § 405(g) for rehearing or other administrative proceedings." (Doc. 21). In his supplemental brief, Bradshaw argues that ALJ Sims (1) failed to perform the function-by-function analysis required by *Mascio* where the medical consultant included a limitation for pushing and pulling in the lower extremities but ALJ Sims did not explain why he did not include this limitation; and (2) erred by using boilerplate language when assessing Bradshaw's credibility, signaling that ALJ Sims relied on the residual functional capacity to assess Bradshaw's allegations of disabling pain and mobility limitations. (Doc. 23 at 1-7). In response to Bradshaw's first supplemental argument, the Commissioner contends that ALJ Sims's discussion of the medical records, specifically discussion of Bradshaw's normal gait, station, muscle tone, muscle strength, and range of motion in the knees and ankles, explains why ALJ Sims did not include a push and pull limitation in the residual functional capacity. (Doc. 24 at 2-6). In response to Bradshaw's second supplemental argument, the Commissioner contends that ALJ Sims did not use boilerplate language when assessing Bradshaw's credibility and then discusses the lack of record evidence supporting Bradshaw's alleged mental impairment. *Id.* at 8-10.

## II. DISCUSSION

### A. Standards of Review

*1. Standards Governing Court Review of Commissioner's Final Decision*

Pursuant to the Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), this Court's review of a final decision of the Commissioner is limited to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, if this Court finds that the Commissioner applied the correct legal standards and that her decision is supported by substantial evidence, the Commissioner's determination may not be capriciously overturned.

While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a scintilla and it must do more than create a suspicion of the existence of a fact to be established." *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (brackets and internal quotation marks omitted). Critically, "[t]he substantial evidence standard 'presupposes a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) (ellipsis omitted) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the

[Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays*, 907 F.2d at 1456. Therefore, the issue before this Court is not whether Bradshaw *is* disabled, but whether the ALJ's finding that he is *not* disabled is explained and supported by substantial evidence and that such decision was reached *based upon a correct application of the relevant law*.

2.  *Standard Governing Review of Objections to M&R*

To assist it in its review of the Commissioner's denial of benefits, a court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of motions for summary judgment.]" 28 U.S.C. § 636(b)(1)(B). A magistrate judge makes only a recommendation as to the final disposition of a matter. The recommendation has no presumptive weight and the responsibility to make a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261 (1976). Accordingly, the Court must conduct "a careful review of the Magistrate Judge's Memorandum and Recommendation as well as a *de novo* review of those issues specifically raised" in the objections. *See Lemken v. Astrue*, 2010 WL 5057127, at *1 (W.D.N.C. Dec. 6, 2010) (Voorhees, J.); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Once such a review is complete, "the Court may accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.  Credibility Determination

Before determining at Step Four whether a claimant can perform his past relevant work, the ALJ must conduct a residual functional capacity assessment. *Mascio*, 780 F.3d at 635. Residual functional capacity is defined as "'an administrative assessment of the extent to which an individual's medically determinable impairment(s), *including any related symptoms, such as pain*, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.'" *Id.* at 639 (quoting Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)) (emphasis in original). In assessing a claimant's residual functional capacity, the ALJ "'must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Id.* at 636 (quoting SSR 96-8p, 61 Fed. Reg. at 34,475 (July 2, 1996)). Furthermore, an ALJ's "residual functional capacity 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Id.* (quoting SSR 96-8p, 61 Fed. Reg. at 34,478). Finally, the ALJ's "residual functional capacity 'assessment must be based on *all* of the relevant evidence in the case record' . . . includ[ing] 'effects of symptoms, *including pain*, that are reasonably attributed to a medically determinable impairment.'" *Id.* at 639 (quoting SSR 96-8p, 61 Fed. Reg. at 34,477) (emphasis in original).

Because the ALJ must consider all relevant evidence, including testimony by the claimant about limitations from alleged symptoms and pain, when making the residual functional capacity assessment, the ALJ must compare the claimant's alleged functional limitations to other evidence in the record before reaching and stating a conclusion regarding the claimant's residual functional

capacity. *See id.* This, in turn, requires the ALJ to assess the claimant's credibility before determining the claimant's residual functional capacity. *See id.*; *see also Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016).

In *Mascio*, the United States Court of Appeals for the Fourth Circuit confronted the following language assessing the claimant's credibility:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, *the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.*

*Mascio*, 780 F.3d at 639 (emphasis added). The *Mascio* Court noted the boilerplate nature of this language and held that the ALJ erred when discussing the claimant's credibility because the boilerplate language "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" *Id*. (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)); *see also Monroe*, 826 F.3d at 188. Although ALJ Sims did not have the benefit of *Mascio* at the time he issued his decision, his decision, contrary to the Commissioner's contention, uses the identical boilerplate language deemed erroneous in *Mascio*. (Tr. 25). Accordingly, ALJ Sims erred when discussing Bradshaw's credibility.

Not all errors in discussing a claimant's credibility necessitate vacating an ALJ opinion and remanding for a new hearing. *See Mascio*, 780 F.3d at 639-40. If the ALJ "properly analyze[s] credibility elsewhere" in his decision, the separate analysis of the claimant's credibility renders the ALJ's erroneous use of the aforementioned boilerplate language harmless. *Id.* When considering whether the ALJ properly analyzed the claimant's credibility elsewhere, the district court must determine if the non-residual functional capacity reasons the ALJ provided for discrediting the claimant's testimony explain the extent to which the ALJ credited and discredited

the claimant's testimony—i.e., which of the allegations and statements testified to by the claimant the ALJ credited and discredited. *See id.* at 639-40; *see also Monroe*, 826 F.3d at 188-90. Put another way, the ALJ's discussion of the claimant's credibility in light of the other evidence in the record must establish an "'accurate and logical bridge'" to the ALJ's decision to credit or discredit each aspect of the claimant's testimony that is relevant to the claim for benefits. *See Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Once an ALJ employs the erroneous boilerplate language at issue in *Mascio*, the ALJ's post boilerplate selective recitation and discussion of the claimant's testimony or tacit adoption of some of the claimant's allegations and statements without elaboration on the reason(s) for why only some allegations and statements were adopted will not satisfy the threshold for a district court to find the use of the boilerplate language harmless. *McQueen v. Colvin*, 2016 WL 4148348, at *5 (M.D.N.C. Aug. 4, 2016).

After employing the boilerplate language at issue in *Mascio*, ALJ Sims summarized some of the medical findings from Bradshaw's 2010 and 2011 doctor visits, compared notes from his pain clinic visits to his testimony about the pain he experienced, and discussed Bradshaw's daily activities. (Tr. 26-27). In so doing, ALJ Sims noted that Bradshaw's allegations were "not consistent" with the notes from his pain clinic visits or with his daily activities. *Id.* Specifically, ALJ Sims's decision states that Bradshaw's daily activities were inconsistent with his "allegations that he has disabling pain, cannot stand for longer than 30 minutes to an hour, cannot walk more than 100 feet, and cannot lift more than five pounds." *Id.* While a post-boilerplate credibility assessment of this nature might avoid the need for a remand in some cases, several considerations leave this Court unconvinced that ALJ Sims's post-boilerplate credibility discussion was not unduly influenced by the residual functional capacity assessment. *Cf. Armani v. Comm'r, Soc.*

*Sec. Admin.*, 2015 WL 2062183 at *2 (D. Md. May 1, 2015) (vacating ALJ decision based on ALJ's use of boilerplate credibility determination at issue in *Mascio* and court's inability to "conclude that the improper implication arising therefrom was dispelled by an otherwise proper credibility analysis").

First, and foremost, Bradshaw stated three times during his testimony that he was unable to bend over or do work down low because of his back condition. (Tr. 38-39, 43). In concluding that Bradshaw was capable of frequent stooping, it appears that ALJ Sims largely discredited Bradshaw's testimony about being unable to bend over. However, ALJ Sims did not tie any of his discussion of Bradshaw's doctor visits, pain clinic visits, or daily activities to Bradshaw's ability to bend over or stoop. (*See* Tr. 25-27). Further, it is not obvious to the Court that anything in the ALJ's discussion of Bradshaw's doctor visits, pain clinic visits, or daily activities necessitates the conclusion, or even allows for the inference, that Bradshaw could stoop frequently over the course of an eight-hour work day, five days a week. Accordingly, when the Court removes ALJ Sims's reliance on the residual functional capacity assessment from ALJ Sims's credibility analysis, the Court is left to guess why ALJ Sims largely discredited Bradshaw's testimony about being unable to bend over or do work down low.

Second, it is not apparent why ALJ Sims concluded that the daily activities identified in his decision actually conflict with several of Bradshaw's allegations that ALJ Sims discredited. While Bradshaw's July 2010 report that he could lift twenty pounds is obviously inconsistent with Bradshaw's testimony that he can only lift five pounds, neither his ability to lift twenty pounds nor his ability to fish from a chair, do some weeding, or operate a riding lawn mower intuitively discredits Bradshaw's allegations of disabling pain, an inability to stand for longer than thirty

minutes, and an inability to walk more than 100 feet at a time.¹  It is all the more difficult to bridge this gap in ALJ Sims's decision where the decision notes that Bradshaw's weeding and lawn mowing activities resulted in flare ups of his symptoms.  (Tr. 26).  Third, where it appears that ALJ Sims at least partially credited Bradshaw's testimony about his pain and noted that Bradshaw's self-reported a pain level of six of ten after receiving injections, it is not apparent to the Court why ALJ Sims subsequently discredited Bradshaw's allegation of disabling pain.²  Fourth, and finally, the Commissioner's inaccurate argument that ALJ Sims did not employ the boilerplate language at issue in *Mascio*, followed by her extraneous discussion of Bradshaw's alleged mental disability (*see* Doc. 24 at 8-10), does nothing to assist the Court in its harmless error analysis or, otherwise, resuscitate ALJ Sims's unfavorable credibility determination regarding Bradshaw's allegations about his physical limitations.  In light of these considerations, the Court is unable to conclude that ALJ Sims's residual functional capacity assessment did not bleed into his assessment of Bradshaw's credibility.  While there may be good reasons to discredit some, or all, of Bradshaw's allegations on remand, ALJ Sims's use of the boilerplate language rejected in *Mascio* cannot be said to be harmless.  Accordingly, the Court **VACATES** ALJ Sims's decision and **REMANDS** this matter under sentence four of 42 U.S.C. § 405(g) for a new hearing.³

---

¹ Notably, none of the daily activities discussed by ALJ Sims require an individual to stand for longer than thirty minutes or walk more than 100 feet at a time, no less do so repetitively over the course of an eight-hour work day, five days a week.

² ALJ Sims appears to have partially relied on Bradshaw's testimony that pain medication made his pain "tolerable." (Tr. 26).  It is not clear, however, what Bradshaw meant when he said his pain was "tolerable" with medication and the word "tolerable" provides little specificity regarding Bradshaw's ability to perform certain functions or work, especially where ALJ Sims seemingly credited Bradshaw's self-report that his pain level only reduced from eight of ten to six of ten and that the pain injections provided variable results.  *See id.*; *see also Beck v. Astrue*, 2011 WL 4455861 (D.N.H. Sept. 23, 2011) (collecting cases concluding that words and phrases like "doing well" and "stable" are not indicative of the claimant's actual state absent consideration of the context the words or used in and the claimant's prior medical history).

³ Having concluded that the error with respect to determining Bradshaw's credibility requires remand, it is unnecessary for the Court to address Bradshaw's remaining assignments of error or objections to the M&R.  However, with respect to Bradshaw's third assignment of error in his motion for summary judgment (*see* Doc. 13 at 21-23), the Court notes the United States Court of Appeals for the Fourth Circuit's recent published decision addressing an ALJ's

**III.  DECRETAL**

   **IT IS, THEREFORE, ORDERED THAT:**

   (1)   The M&R (Doc. 19) is **NOT ADOPTED**;

   (2)   Bradshaw's Motion for Summary Judgment (Doc. 12) is **GRANTED**;

   (3)   Defendant's Motion for Summary Judgment (Doc. 16) is **DENIED**; and

   (4)   The ALJ decision below is **VACATED** and this matter is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for a new hearing.

Signed: January 20, 2017

*Richard L. Voorhees*
Richard L. Voorhees
United States District Judge

---

responsibility to apply the PRT and follow 20 C.F.R. § 404.1520a. *See Patterson v. Comm'r of Soc. Sec. Admin.*, ___ F.3d ___, 2017 WL 218855 (4th Cir. Jan. 19, 2017).